Judge Marsham.
delivered the Opinion of the Court.—The Chief Justice did not sit in this case.
This ejectment was brought, in 1829, upon a demise from Rachel Shackleford, dated the 1st of July, 1824. verdict and judgment were rendered for the defendants, and the plaintiff’s motion for a new trial having been overruled, she has appealed to this Court.
On the trial, the plaintiff read a patent to herself, by the name of Rachel Bell, for eight hundred acres of land, including that now in contest, and a written agreement between her late husband, Bennett C. Shackleford, deceased, and William Barnett, for the sale and conveyance of the whole quantity included in the patent, which turns out to be about one thousand acres; and introduced evidence conducing to prove that, Barnett had taken possession under her title, and that the defendants were in possession when the declaration and notice were served on them—two of them under deeds in fee simple from Barnett, dated in 1825, and the third under an executory contract with him, of the same year; and that her husband, B. C. Shackleford, died in 1823.
The defendants read a deed purporting to be a conveyance in fee from B. C. Shackleford and wife to Wm. Barnett, of all the land contained in the patent—it being the same deed which has been heretofore decided to be void as to Mrs. Shackleford, unless re-delivered by her, after the death of her husband: Barnett vs. Shackleford, 6. J. J. Mar. 532; Miller vs. Shackleford, 3. Dana, 289, and Miller vs. Shackleford, spring term, 1836, [4. Dana, 261,] and proved by one witness, that, in 1827 *233 or 1828, the plaintiff, then a widow, in speaking of the said deed, but not in the presence of the grantor, or of any of the defendants, and in a different county from that in which the land is situated, said ‘she held the deed sacred, and confirmed it, or had confirmed it, or both; but that she thought she had a right to the surplus;’ and another witness proved that, after the death of her husband, and between the year 1825 and 1828, he had frequently heard her say, (but not in the presence of Barnett or the defendants, and at a distance from the land,) ‘that she had sold the eight hundred acres, and had made a deed for it, and had no right or title to it, and did not claim it, except the surplus.’ It is uncertain whether, at the time of making these declarations, Mrs. Shackle-ford was ignorant or not of the actual invalidity of the deed, and it may be inferred, that no other sale or deed than that made during the coverture, was referred to; but this inference is not conclusive. The defendants also, read a patent to the heirs of A. Hanna, older in date than that of the plaintiff, and covering a part of the land in dispute; and introduced evidence conducing to prove that Barnett, under whom they claim, had entered upon the land in contest, or some part of it, claiming to have purchased it under Hanna’s patent, before he had acquired any interest or possession under the claim of the plaintiff. But as the Court gave no instruction favorable to defendants, in relation to this branch of the defence, and as it is to be presumed that the verdict, being for the defendants as to the whole of the land, was not in any degree influenced by the production of Hanna’s patent, or any evidence relating to it — it is manifest that no ground of reversal can exist in this part of the case, and it will be'passed by, for the present, without farther notice.
On the other branch of the case, various instructions were given, relating principally to the effect of Mrs. Shackleford’s declarations, as tending to prove a re-delivery of the deed after the death of her husband; and, second — to the effect of the same declarations, and of the continued occupancy of the land by Barnett and his alienees, as making it requisite that there should have *234 been notice to quit, or a demand of the possession, to enable the plaintiff to maintain this action.
The mere declarations of a party to an invalid deed — as, that ‘she held it sacred, & had confirmed it,’ cannot, of themselves, amount to a re-delivery. To constitute an effective re-delivery, the intention must concur with the act; and as there could be no such intention when the party believed that the deed was, & had been from the first, valid and binding, & therefore ‘held it sacred,’ the avowal of such impressions does not conduce to prove, that there had been a re-delivery in fact.— Yet such declarations made considerately, and with a full understanding of the subject, may conduce to prove that there had been a re-delivery.
First. The Court, after announcing, in several propositions, the circumstances which, in its opinion, would amount to a re-delivery of the deed, and the manner in which such re-delivery might be made, and after instructing the jury, correctly, that the declarations of Mrs. Shackleford did not constitute a re-delivery, and did not conduce to prove a re-delivery at any of the times when they were made, also instructed them, that “they conduced to prov-e that she had re-delivered the deed, after the death of her husband, and before the declarations were made;” and further, “that, in order to constitute an effectual re-delivery it was not necessary that she should know that the deed was void, or what was its legal effect.”
We are of opinion that a, re-delivery roust, like a first delivery, be made with the intent that the instrument shall thereby become the deed of the party, or it will not have that effect; and, as it seems to us, there cannot be such an intent while the party believes that the deed is his already, without re-delivery. That which is believed to be a deed, cannot be afterwards intended to be made a deed, any more than that which is in fact a deed by one valid delivery, can be afterwards made so by a second delivery. A formal act of delivery implies, and perhaps conclusively proves, the intent to make the instrument a deed; a formal re-delivery may a]so prove a similar intent, and, as essential to it, a knowledge that the instrument was not previously obligatory, As there must be an intention, as well as an act, in a first delivery, so in case of re-delivery, there must also be united with these, a knowledge of the previous invalidity of the instrument: that is, of the necessity of a re-delivery. The Court, therefore, erred in the second instruction above stated, in supposing, either that there could be an intention to re-deliver the instrument, and thereby to make it a deed, without any knowledge of its not being a deed before; or in supposing that there could be a valid re-delivery without any such intention.
It is only necessary further to remark, on this part of *235 the subject, that whatever facts may, under the circumstances of this case, be deemed equivalent to an actual manual tradition of the deed from the grantor to the grantee, or may dispense with it, such circumstances cannot amount to a valid delivery, nor be equivalent to it, unless accompanied with the intention to make the instrument thenceforth the deed of the grantor, and with the knowledge that it was not previously so.
But if Mrs. Shackleford could not have made a valid re-delivery of the deed, whereby to pass her title, without intending to make such delivery, and without knowing its necessity, it follows that if, at the time of making the declarations above stated, she was still ignorant of the invalidity of the deed, there could have been no effectual re-delivery of it before that time, and consequently, her declarations could not prove that such re-delivery had taken place. The declarations, it is' true, may imply a belief that there was some defect in the deed; but they seem to refer to a defect which might be cured by confirmation, and indeed, by a simple declaration that she held the deed sacred, and then confirmed it. But the precise question in issue in this part of the case, was whether she had re-delivered the deed. If she knew before these declarations were made, that the deed was void, and could only be made good by re-delivery, then, as in saying that she had confirmed it, she might have intended to refer to an act by which she had made it good, this expression, though not technically appropriate to describe a re-delivery, might, if deliberately and understandingly made, have been understood as indicating, and therefore as conducing to prove, that she had done the only act by which she could have made it good. But if she was then ignorant of the invalidity of the deed, and of the necessity of re-delivering it in order to give it effect, her declarations cannot be considered as pointing to a valid redelivery, and, therefore, do not conduce to prove it. Moreover, although the single expression, that ‘she had confirmed the deed,’ might have authorized the inference that she had known of its invalidity, and had done such act as was necessary to make it good: yet all the *236 declarixtions taken together, may repel that inference, and may indicate that she did not intend to refer to any act of confirmation more effectual than the expressions themselves which were used at the time: viz. ‘that she then confirmed the deed.’ We are of opinion, therefore, that it was erroneous to instruct the jury, without qualification, that the declarations conduced to prove a re-delivery. The declarations or confessions of a party are competent evidence against such party to prove the fact acknowledged; but they do not prove nor conduce to prove a particular fact, unless they can be fairly understood as indicating that fact itself, or some other from which it must be implied.
The plaintiff had said, but not to the defendants, nor in their presence, that she considered the deed, thro’ which they derived title from her, as valid: held that this does not conduce to prove, that they entered on the land at her instance, or with her approbation, so as to entitle them to notice to suit, or make a demand of the possession, be fore suit, necessary. And if the defend’ts did purchase and take possession in consequence of declarations made by the plaintiff, that fact alone Would.not affect her rights, unless the declarations were made with a view, or under circumstances which operated, to induce them to make the purchase. Under some circumstances, the defendants, having been induced by the plaintiff to purchase, might be enabled to hold the title; but not where the inducement consisted of declarations made by her, in ignorance of her rights.
*236 Second. Several instructions relating to the necessity of a notice to quit, or a demand of possession, previous to the date of the demise or the commencement of the action, were given, on motion of the defendants, and excepted to by the plaintiff. These import: first — that the declarations of Mrs. Shackleford might be considered by the jury, as amounting to such an assent and assurance on her part, with regard to the possession of the land by Barnett and his alienees, as authorized them to continue in the possession, and if they did continue in possession, in faith thereof, that notice or demand before the date of the demise was necessary. Second. That the same declarations might be considered such an open recognition of the validity of the deed, as to have been the cause of the purchase and occupancy of the land by the defendants, or at least that they may have encouraged the defendants to purchase, &c. and that, if they had this effect, notice or demand before the action was necessary. Third. That any recognition of the deed by the plaintiff, which was known to the defendants, and which reasonably justified the belief that it was agreeable to her that they should continue in possession, coupled with their long continued occupancy, entitled them to notice. And fourth — that it was not necessary that they should admit their deed was not good, or that they should rely exclusively upon the plaintiff’s title and admission, in order to entitle them to notice.
Defendants are not entitled to notice to quit, nor is a demand of possession necessary, unless they rest their right of possession upon consent or permission from the plaintiff.
It is only where the i elation of landlord and tenant exists, in some form, that notice to quit, or a demand of possession is necessary : whenever the tenant claims the fee, or disclaims the landlord’s title, or takes protection under another, the landlord has aright to enter, or maintain any action for the possession, without notice or demand; and proof that a party in possession claims to hold adversely, is sufficient to show that he is not entitled to the privileges of a tenant.
The only facts on which these instructions are based, are the declarations referred to, the actual possession by Barnett and the defendants, his alienees, and the purchases made from the former by the latter. And we are of opinion that, neither these facts, nor any other evidence in the cause, justify the inferences which (in the two first instructions,) are submitted to the jury, as deducible from them: viz. that the possession and purchase of the land by the defendants, were the consequence of the declarations of the plaintiff, and in faith of them. But further, if the possession and purchase of the land by the defendants, were the consequence of the declarations of the plaintiff, and of a reliance upon them, this fact, alone and unaccompanied by any subsequent recognition, could not affect the rights or condition of the plaintiff, unless her declarations were made, either with a view to induce the acts done by the defendants, or under such circumstances as that they must, in all probability, have operated as such inducements. And even if this were the case, it would not follow that the defendants, after purchasing in faith of these inducements, the fee in the land, would be entitled to notice to quit. They might, under some circumstances, be entitled to hold the estate in fee which they had been induced to purchase. But under no circumstances could the declarations in question have had this effect, if made by the plaintiff in ignorance of her rights. Nor could they have had the effect of entitling the defendants to notice, or a demand of possession, unless it appeared that they relied upon her title, and claimed the right of possession exclusively on the ground of her permission and consent.
And this brings us to an objection which applies to all of these instructions, and which is exposed to full view in the last: viz. that they assume, either that the facts and inferences which they submit for the enquiry of the jury, constitute, expressly or impliedly, the relation of landlord and tenant, between the plaintiff and the *238 defendants, or that the existence of such relation, actual or implied, is not necessary to entitle the latter to notice. In fact, they all imply, and the two last avow, that the defendants might have claimed and occupied the land as their own fee simple, up to the time of the trial, and might even then deny plaintiff’s title, by-attempting to show, first — that she had conveyed it away long before, and secondly — that the title under Hanna’s patent was better than hers, and, third — that they did not in fact occupy under her title: and yet that they might take advantage of any circumstances in her conduct, or conversation respecting the land, which might, if attended with other circumstances, have formed the basis of a contract, or of the relation of landlord and tenant, and claim, then for the first time and for themselves, the benefit of that relation, which they still denied to the plaintiff.
It is absurd to suppose — what is intimated in the third, and avowed in the fourth instruction — that the defendants could rely on the plaintiff’s title and permission or assent to their occupancy, just so far as was necessary to require notice to quit, and to defeat her action, unless it had been given; and that they could, also rely upon a fee simple title in themselves, or an outstanding elder title in another, or claim that their possession was adverse to the plaintiff. These three alternatives are each inconsistent with the first branch of the proposition, and with the principle on which the requisition of notice to quit is founded. Even in the case of an express tenancy, if the tenant claim the fee, or disclaim holding under the landlord, or take protection under another, either of these facts absolves the landlord from his obligations as such, and leaves him free' to enter upon or recover the land, without notice or demand. And certainly, where the relation of landlord and tenant, and the consequent necessity of notice, is not expressly proved, but to be implied from circumstances, the existence of either of these facts must be sufficient to repel the implication and all its consequences.
But without enlarging further upon this subject, on *239 which our views were fully stated in the consideration of the third question arising on the special verdict in the case of Miller vs. Shackleford, spring term, 183-6, [4. Dana, 278,] we are of opinion, for the reasons above stated, and for those which are stated in the case referred to, that these instructions were erroneous, and they were obviously prejudicial to the plaintiff.
An entry without title or authority, does not oust a prior possession beyond the intruder's actual close, nor for longer time than the possession continues. The fact that a party had gone upon a tract of land, and cut and removed the timber, claiming to have purchased a title to the land, cannot destroy the relations subsisting between him and another, under whom he afterwards entered, and under whom he holds.
With regard to that part of the defence which grows out of the introduction of Hanna’s patent, and the evidence in relation to it, no instructions were given as asked for by the defendants; and we are of opinion that there was no error in refusing to give those which were asked for by them; because one of them assumes facts which the evidence does not conduce to prove, and the other states a conclusion broader than the facts which it assumes. On this subject we deem it sufficient to refer to so much of the opinion of this Court, in the ease above cited, as relates to the same subject, with these additional remarks: that there is no competent evidence in this case, conducing to prove that Barnett had acquired the title of Hanna’s heirs, or had any authority to enter under their title when he entered upon the land, before his purchase under Bell’s claim; and that his entry, being without title or authority, could not oust the existing possession under Bell’s claim, to any greater extent than his actual close, nor for any longer period than the land was actually occupied by him, under such entry; that it is extremely doubtful, from the evidence, whether he had any possession m tact when he purchased under Bell’s claim; and that the fact of his having previously entered upon an enclosure held under Bell’s claim, and cleared away the timber from it, without further occupancy, professing, at the time, that he had purchased Hanna’s claim, did not, in our opinion, constitute such a possession under that claim, or such a relation to its owners, at the time oi his purchase and acquisition of possession under the plaintiff’s patent, as to prevent or displace the consequences of this purchase and acquisition of possession as stated in the opinion, referred to.
A deed not valid to pass a title, may be used for some purposes ; as, to show how a party holds, or with evidence to prove that it had become valid by a redelivery.
The declarations of a party, made at a time when he was in possession of land, may be used to show the nature of his claim—not the fact of a purchase. Those made at other times, are not evidence.
If, as is to be implied from the bill of exceptions, the instructions moved for by the plaintiff, on this part of the subject, were given by the Court, they were sufficiently favorable, and conform substantially to our view of the law arising upon the facts as above stated.
The evidence by which the defendants attempted to prove that, the deed from Shackleford and wife had been acknowledged by the latter, in such a manner as to bind her, was incompetent for that purpose (Barnett vs. Shackleford, 6. J. J. Marsh. 532,) and should have been excluded; but the deed itself was properly retained as evidence: first — ’because it conduced to show in what manner the defendants held the possession; and second —because the declations of Mrs. Shackleford, under the qualifications which have been stated, might have conduced to prove its re-delivery.
We are also of opinion, that the declarations of Barnett, made at the time when he was on the land, exercising acts indicating ownership or possession, were competent to show the nature of his claim, but not the fact of a purchase. His statements made at other times, were not evidence, and should have been excluded.
For the errors above noticed, the judgment is reversed, and the cause remanded with directions that a new trial be had, on principles conformable with this opinion.