## Pursifull v. Green, et al.

(Decided March 2, 1926.)

Appeal from Bell Circuit Court.

Adverse Possession—Rule Relating to Possession Under Color of Title to Well-Defined Boundary is Not Sufficient to Grant Title by Adverse Possession Against Superior Title, where there was no Actual Possession.—Where land between contested locations of dividing line was never occupied by either party, though boundary of commissioners appointed to divide lands favoring plaintiff was well defined, and though commissioners' deed was color of title, rule relating to possession under color of title to a well-defined boundary is not sufficient to grant plaintiff title by adverse possession as against superior title, unless the entry and possession be upon the interference.

MARTIN T. KELLY for appellant.

N. R. PATTERSON and JAMES H. JEFFRIES for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellant, Mary Belle Pursifull, instituted this action to recover of appellees, William Green, et al., the

damages alleged to have been suffered by her from their trespass upon her real estate committed by cutting and removing and disposing of timber. The answer put in issue the ownership of the land from which the timber was cut and removed, appellee, William Green, denying that appellant owns it and claming to own it himself. Trial was had before a jury, and, at the conclusion of the evidence, after overruling her motion for a directed verdict, the trial court submitted to the jury the issues made by the pleadings and proof by instructions prepared and offered for appellant. On the issues thus submitted the jury found for appellees, and appellant prosecutes this appeal from the judgment rendered in conformity with that verdict.

Appellant insists that the trial court erred in overruling her motion for a directed verdict and that the judgment rendered herein is not sustained by the evidence. It appears that appellant Pursifull and appellee Green own adjoining tracts of land. The problem of the action is to locate the dividing line between them. The jury by its verdict found that line to be located as appellee contends it should be. Appellant contends that the line is located approximately 150 yards east of the location found by the jury and determined by the judgment rendered herein. Appellant owns the land west of the dividing line and appellee that east of it. The timber in controversy was cut on the land lying between the two disputed locations of the dividing line.

It appears from the record herein that appellant and appellee trace their title to a common remote grantor, Mount Pursifull. He established the dividing line now in dispute in 1857. He then owned in one body all the land now owned by both appellant and appellee. It lay immediately north of Cumberland river in Bell county, Kentucky. On September 8, 1857, he carved from the entire tract so owned by him a boundary which he conveyed to one of his sons, John Matt Pursifull. The land so conveyed has passed by mesne conveyances to appellant. The land left in the ownership of Mount Pursifull after the conveyance in 1857 subsequently passed from him by deed and by mesne conveyances to appellee, Green. So the important part that the deed of 1857 and its description of the line between the land it conveyed and that left in the ownership of Mount Pursifull plays in determining the question presented by this appeal can be

perceived. The tract so conveyed was described: "Beginning at the upper end of the old sand field and a gulley; thence up the river to the point of an island; thence north 11 west to back line of Dorton's line; thence down back line to H. C. Pursifull's line; thence with said line to the beginning." The line running from the corner on the river bank opposite the point of an island north 11 west to the back line of Dorton's line divided the land conveyed by that deed from the remainder of the tract owned by the grantor and is the dividing line between the land now owned by appellant and that now owned by appellee.

There is no contrariety of evidence in the record herein but that a large island in Cumberland river, and the only one within several miles of the land in controversy, comes to a point at its lower end immediately opposite the place where appellee contends and the jury found the beginning corner of the dividing line between the lands of appellant and appellee to be located, and there is no contrariety in the evidence but that when run from that point, with proper regard to the variation of the magnetic from the true meridian, the line will be located on the ground exactly as contended for by appellee and as found by the jury. The line running from the river north 11 west to Dorton's back line is, according to the evidence herein, 500 poles long. The evidence discloses that on the line run from the point opposite the lower end of the island, as appellee contends and as the jury found, it should be run, approximately 40 marked line trees are found standing in and near it tending to establish the correctness of that location of the line in dispute. It is true that the evidence of the surveyors introduced herein for appellant tends to establish that the marks on those trees are not old enough to have been made in 1857 when this line was established. Blocks from some three or four trees, which a surveyor for appellant testified he cut from the line trees found marked along the line as run for appellee, which have been brought to this court as exhibits with the record, disclose that those marks were made approximately and not exceeding 25 years ago. However that may be, it would seem that to locate the beginning corner of the line in dispute by locating it with reference to the point or lower end of the island in Cumberland river would fix the proper location of that line beyond all question or dispute. However,

after the conveyance of 1857, and when the common remote grantor of the parties in 1878 came to convey the rest of the land owned by him, he described it as follows:

"Beginning at a deep gut the second gut above the meeting house; thence up Cumberland river with its meanders to the upper end of the Holcomb field; thence N. 11 E. to the back line of the said Dorton tract of land now owned by said Pursifull; thence with the back line of same to J. M. Pursifull's line; thence with J. M. Pursifull's line to the beginning. Being all of the land now owned by said Mount Pursifull on the north side of the Cumberland river."

All of the controversy herein is attributable to the fact that in deeding the remainder of his land Mount Pursifull did not locate its beginning corner with reference to the point of the island in Cumberland river as he had located the beginning corner of the dividing line by the deed of 1857. Appellant has introduced the testimony of a number of witnesses tending to establish that there was opposite the point of the island no deep gut, and that the deep gut, the second gut above the meeting house, mentioned in the description above, is located approximately 150 yards above the point or lower end of the large island in question. There is found in the record some evidence tending to establish that formerly there was a ravine or gut on the river bank opposite the lower end of the island, but, however that may be, the deed of 1878, as the land it conveyed was described by it, was unquestionably intended by Mount Pursifull, the common remote grantor of the parties hereto, to convey to the grantee therein all of the land then owned by him on the north side of the Cumberland river, which was but another way of saying that he conveyed all of the land on the north side of Cumberland river which he had not conveyed to John Matt Pursifull by the deed of 1857. Subsequent deeds in appellee's chain of title used the same or a similar description for the dividing line between the two tracts of land. Evidence for appellant tends to establish that locating the beginning corner of the dividing line by the deep gut, which they contend is the second above the meeting house, in conformity with the description in the deed of 1878, *supra*, and running the line from that point North 11 west to the back line of the Dorton

tract, four marked trees may be found standing in or near the line to denote the correctness of its location.

Testimony for appellant tended to establish that in executing an order of division, when commissioners appointed for the purpose divided the lands of one of her remote grantors among his heirs, the boundary was extended to the line claimed by her as the proper location of the dividing line between her land and that of appellee. However, all of the land in controversy herein between the two contested locations of the dividing line is in forest and has never been in the actual possession of either party. If the boundary of the commissioner's deed, which ran to the line now contended for by appellant, be conceded to be a well defined boundary, and if that deed be conceded to be color of title, the rule relating to possession under color of title to a well defined boundary is not sufficient to give appellant and those under whom she claims title by adverse possession, because that rule will not prevail against superior title unless the entry and possession be upon the interference. See Ramsey v. Hughes, et al., 212 Ky. 715, — S. W. —, and the cases therein cited.

When the record as a whole is considered this court readily understands how the jury found in favor of appellee. The most conclusive fact, the fact in all the record possessing most probative value as to how the controversy should be settled, is the location of the beginning corner of the dividing line fixed by the deed which originally established it with reference to the point of the island in Cumberland river. In view of the uncontradicted and unmistakable correctness of the location of the dividing line between the parties hereto when located in consonance with the description given in the deed that originally fixed it, the court has concluded that appellant's contention that the trial court erred in not directing a verdict for her and that the judgment herein is not supported by the evidence is wholly without ground to support it. Our consideration of the record has disclosed no error committed upon the trial hereof and none has been pointed out to us. Hence, the judgment herein must be confirmed.

Judgment affirmed.