## Caughlin v. Wilson.

(Decided November 24, 1915.)

### Appeal from Carlisle Circuit Court.

1. Boundaries—Waters and Water Courses.—Where the line of a grant runs to the bank of a stream and by it or along the stream or the bank, the grant extends to the middle thread of the stream, unless there is something in the description which clearly ex-

cludes the intermediate space between the edge of the bank and the thread of the stream.

2. Navigable Waters—Boundaries—Riparian Rights.—A riparian owner is the owner of all the accessions made to his lands by the waters of a stream receding from it and leaving the land uncovered, which had theretofore been covered with water, or by deposits made between his bank and the middle thread of the stream, so as to place the bed of the river above the surface of the water.

3. Navigable Waters—Islands—Riparian Rights.—The owner of an island in a river has the same riparian rights as an owner upon the main land.

4. Limitation of Actions—Section 2513, Kentucky Statutes—Void Patents.—The seven-year statute of limitations provided for in Section 2513, Ky. Statutes, does not apply to nor protect an occupant under a void patent, as the claimant under such a patent has no title deducible from the Commonwealth.

5. Boundaries—Possession.—Where one enters into possession of a tract of land, claiming title under a deed or patent, with the intent to take and hold possession to the extent of the boundaries of his deed or patent, he is in the actual adverse possession of the entire tract to the boundaries of his deed or patent, to the extent that same is not in the actual possession of another.

6. Boundaries—Patents—Possession—Extent of.—One claiming under a deed or patent, though void, may show it in evidence as proof of the extent of his possession.

7. Boundaries—Possession.—One without color of title is not in the possession of land which he occupies, except to the extent of his enclosure, or to the extent of a well-defined, marked, or natural boundary, to which he claims.

8. Boundaries—Possession.—One holding possession and claiming title under a junior patent is not in the actual possession of any more of the boundary than to the extent of his enclosure, or to a well-defined and marked or natural boundary, to which he claims, as against one who holds under a senior patent, and is in the actual possession of the lands embraced by his boundary.

JESSE. F. NICHOLS and HENDRICK & NICHOLS for appellant.

JOHN E. KANE and GUS THOMAS for appellee.

Opinion of the Court by Judge Hurt—Affirming in part and reversing in part.

By this action in ejectment, the appellee, Wilson, sought to recover the possession from the appellant, Caughlin, of two tracts of land, which adjoin each other, one of which consists of two hundred acres and the other sixty-six and one-half acres. The two tracts of land are described by metes and bounds in the petition. The ap-

pellant traversed the allegations of ownership and wrongful possession alleged in the petition, and in addition thereto, claimed that he and those under whom he claimed title had been in the adverse possession of the two tracts of land for more than fifteen years before the filing of the petition and relied upon the fifteen year statute of limitations provided in such cases. He, also, alleged that he and those under whom he claimed had been in the actual occupancy of the lands for more than seven years before the bringing of the suit and claiming under record title deducible from the Commonwealth of Kentucky to him, and relied upon the seven year statute of limitations provided for in section 2513, Ky. Statutes. As a further defense, he plead that at the time the appellee acquired the title under which he claimed the lands, they were then in the adverse possession of his vendor and for such reason the purchase and conveyance under which appellee claimed were void. The affirmative allegations in the answer were controverted by reply and upon the issues thus formed the case went to trial before the court and a jury in the Carlisle Circuit Court. The jury returned a verdict, under the evidence and the instructions of the court, in favor of appellee, and the court thereupon rendered a judgment adjudging that appellee was the owner of the lands in controversy and entitled to their possession and awarding a writ of possession in his favor for them.

The appellant filed grounds for a new trial and moved the court to set aside the verdict of the jury and judgment of the court, but his motion was overruled, and he appealed to this court.

It should be stated, that at the conclusion of all of the evidence, the appellant moved the court to peremptorily instruct the jury to find a verdict for him, but this motion the court overruled. The appellant, also, moved the court to direct the jury to return a verdict for him as to the two hundred acre tract of land in controversy, but this motion was, also, overruled.

The appellant's grounds for a new trial embraced a number of things, but the appellant only insists upon two of his grounds for a reversal of the judgment, one of which is, that the court erred to the prejudice of his substantial rights in instructions given by it to the jury, and the other is, that there is no evidence to support the verdict of the jury.

The facts of the case, as developed by the proof, are about as follows:

In 1837 a patent was granted to Price and H. L. Edrington for two hundred and thirty-seven and one-half acres of land, as it was described in the patent, the whole of island number 3, in the Mississippi river, and in 1872 a patent was granted to William Parsons for two tow heads in the river, one containing about seventy acres and the other ten acres, the larger lying to the west of island number 3, and the latter, south of island number 3. While the calls in the patent, as regards the larger tow head, mentioned its metes and bounds by courses and distances, but the other description shows that the line really extended around to the water's edge of the tow head, and the same may be said with regard to the calls in the patent to the Edringtons in 1837. Since the granting of these patents the river has, by imperceptible degrees, changed its course westward from island number 3, and on the west side of island number 3 and between the original bank of the island and the middle thread of the stream of the river, accretions have added to the island until it now extends possibly a mile and one-half to the westward of the original bank of the island. The lands in controversy are a portion of these accretions and are embraced between the lines from the northwest and southwest extremities of these two patents extended westward to the end of the accretions in the direction of the middle thread of the river. By mesne conveyances and by descent, the lands embraced in the patent to the Edringtons became the property of the appellee on the 31st day of January, 1898. By various mesne conveyances he acquired title to two tow heads and the land granted to William Parsons in 1872, on the 25th day of November, 1899. He obtained the title to that portion of the land patented to the Edringtons, which he now claims, by deed to him from one Mathis and the title to the two tow heads and the land embraced in the patent to William Parsons by deed to him from Noah Parsons. One James Johnson, conceiving that the accretions formed to the western boundary of island number 3 was vacant and unappropriated land, obtained a patent to the sixty-six and one-half acres in controversy on the 31st day of December, 1897, and a patent to the two hundred acres in controversy under a survey made on the 9th day of November, 1899, and the

patent issued in the year 1900. The appellant, also, claimed that one Woodrow had "squatted." upon the sixty-six and one-half acre tract of land and had some kind of an inferior dwelling house thereon previous to the time that Johnson caused it to be surveyed for a patent, and that Woodrow sold his claim of possession to Johnson on the 31st day of May, 1897, and executed a writing to him, by which Woodrow transferred his claim and possession to Johnson, and about the same time, that Woodrow and one Jones marked a boundary around the sixty-six and one-half acres; that in 1898 the appellee became the tenant of Johnson upon the sixty-six and one-half acre tract of land and continued in that way holding the possession for Johnson until the year 1903, when Johnson, by a deed, conveyed to him both of the tracts of land in controversy. Appellee claims that he lived upon the sixty-six and one-half acre tract of land from 1898 for three years thereafter, when he removed from it, but kept the possession of it by tenants, who occupied the land until after the bringing of this suit.

At the close of the testimony, the court, upon its own motion, gave to the jury instructions numbers 1, 2, 3, and 4, to which both the appellee and the appellant objected and saved exceptions. The appellee then offered instruction C, which the court gave over the objection of the appellant, and appellant then offered instructions X and Y, which the court refused, to which appellant excepted.

By instruction number 1, the court directed the jury to find for the appellee all of the two tracts of land in controversy, unless it should believe from the evidence that the appellant and those under whom he claimed had had the land or some portion of it actually enclosed for a period of fifteen years immediately preceding the filing of the suit and had had the land in actual, adverse, peaceable, exclusive, and notorious possession, claiming the same as their own against all persons for a period of fifteen years or more preceding the filing of the suit, and that appellant and those under whom he claimed had claimed and held the land to a well-defined and marked boundary, and if appellant had held said tracts of land or any part of same with an actual enclosure thereon claiming to a well-marked line for a period of fifteen years, then the law was for the appellant as to the land so occupied and claimed for said period.

Instruction number 2 advised the jury that it was established in the evidence, that on September 19th, 1837, there had been granted by patents to Price and H. L. Edrington the lower end of island number 3, then containing two hundred and thirty-seven and one-half acres, and that on June 5th, 1872, there had been granted by patents to William Parsons the two tow heads near the foot of island number 3, one containing seventy acres and the other ten acres, and that by subsequent conveyances the appellee had acquired a good title to the tracts of land and was the owner of the land, and that the jury would find for him the lands in controversy, unless it believed as set out in other instructions given in the case.

By instruction number 3 the jury was directed that if it believed from the evidence that the appellant and those who and through whom he claimed had a connected title to the sixty-six acre tract of land deducible of record from the Commonwealth of Kentucky, and had had actual occupancy of same by settlement thereon under such title for seven years before the commencement of the suit, and during said time had claimed same to a well-marked boundary, the jury would find for appellant as to the sixty acre tract.

By instruction number 4 the jury was directed that if the appellant or those under whom he claimed title was in actual adverse possession of the sixty-six acre tract of land and occupied and had enclosed a part of same and were in possession claiming all of same to a well-marked boundary at the time the appellee purchased the land, the law was for the appellant as to the sixty-six acre tract and the jury would find for him.

By instruction C the court advised the jury that neither the appellant, nor Johnson, under whom he claimed, acquired title to the lands in controversy under the patents issued to Johnson on December 31st, 1897, and in April, 1900, because both of the patents were null and void.

Instruction number 2 and instruction number 1, so far as they directed the jury to find for the appellee the lands in controversy, unless appellant had acquired title by adverse possession, or by reason of the conveyance to appellee being champertous, will be first considered. The validity of the patents under which the appellant and appellee each claim and the validity of the mesne conveyances by which the title of the original grantees

passed to the appellee were matters of law for the court and were properly determined by the court. The evidence conclusively shows, and no attempt is made to dispute the fact, that after these patents were granted to the Edringtons and to Parsons, the accretions to the west side of island number 3 and between it and the middle thread of the river embraced the lands which are in controversy in this suit. It is a well settled principle of law in this State that where the line of a grant runs to the bank of a stream and by it or along the stream or the bank, the grant extends to the middle thread of the stream, unless there is something in the description which clearly excludes the intermediate space between the edge of the bank of the stream and the thread of the stream. Williamsburg-Boone Co. v. Smith, 84 Ky., 372; Kentucky Lumber Co. v. Green, 97 Ky., 257; Sweanam v. Holbrook, 38 S. W., 961; Runion v. Alley, 39 S. W., 849; Vaughn v. Foster, 20 R., 682; Stone Street v. Jacobs, 118 Ky., 745; Hilleary v. Wilson, 100 S. W., 1190; Watson v. Wilson, 150 Ky., 27. It was expressly held in the case of Berry v. Snyder, 3 Bush, 266, that a grant of land binding on the Ohio river, if there was not something in the terms of the grant which excluded it, the grant extends to the middle thread of the main channel of the river and all accretions belong to the riparian owner as an incident to his title. This, of course, applies to rivers where the tide does not ebb nor flow, as in the sea.

In Kent's Commentaries, 3 Vol., 527, commenting upon a grant bounding upon a river or upon the margin of it or along it carrying the title of the grantee to the center of the stream, it says:

"It would require an express exception in the grant or some clear and unequivocal declaration or immemorial usage to limit the titles of owners in such cases to the edge of the river."

It is well settled that a riparian owner is the owner of all the accessions made to his land by the waters of a stream receding from it and leaving the land uncovered which had theretofore been covered by water, or by deposits made between his bank and the middle thread of the stream, so as to place the bed of the river above the surface of the water.

In Wilson v. Watson, 144 Ky., 352, it was held by this court in a case similar in facts to this one, that the

title papers relied upon by appellee in this case as the foundation of his claim invested him with the title to all the accretions upon the west side of island number 3 which adhered to the lands embraced by the patents to Parsons and Edringtons at the time they were granted and between the western boundary of the island and the middle thread of the stream of the river. As stated, there was no dispute in the evidence of the fact that the lands in controversy were a part of the accretions to island number 3 upon the west side and between the lines running from the corners of the original grants to Parsons and Edringtons to the river. It was, also, held in that case that the owner of an island in the river had the same riparian rights as an owner upon the main land. There was then no question for the jury as to whether or not the lands in controversy were embraced within the grants under which appellee claimed title, and the court was not in error in instructing the jury to find that appellee was the owner of the lands, unless he had lost them by the adverse possession of his adversary or by reason of his title to the lands being champertous. The grants to Johnson for these lands were grants to him of lands which had already been entered, surveyed, and patented and were therefore void.

With regard to the two hundred acre tract in controversy, instruction number 1 was more favorable to appellant than he was entitled to. The court submitted to the jury whether or not the appellant was entitled to the two hundred acre tract of land or any part of it by reason of adverse possession of it for the statutory period. The patent to Johnson, under which appellee claims, being void, he would not have title to any part of the two hundred acre tract in controversy unless appellant and Johnson had had fifteen years continuous adverse possession of it before the filing of this suit. There was never any improvement upon the two hundred acre tract, nor any marked line around it, nor any act of ownership exercised over it by Johnson or any one else until after the conveyance of it by Johnson to appellant in 1903, which was less than fifteen years before the filing of the suit. There is no claim that Woodrow was ever in possession of the two hundred acre tract or any part of it or that it was ever claimed by Johnson until he had it surveyed for a patent in 1899. Johnson does not claim, while living upon the sixty-six and one-half acre tract, that he made any claim to the two hundred acre tract,

and the appellant stated that when he moved on to the sixty-six and one-half acre tract that he rented only that from Johnson, and appellant did not pretend that he had ever had any possession of it for Johnson until after he purchased it from him and could not have had any possession of it from Johnson until Johnson caused it to be surveyed in the latter part of the year 1899. The court should, therefore, as a matter of law, have peremptorily instructed the jury to find for appellee as to the ownership and right of possession to the two hundred acre tract in controversy.

It is insisted for appellant that as to the sixty-six and one-half acre tract, that he had continuously occupied it, claiming to be the owner of it under a connected title of record deducible from the Commonwealth of Kentucky to him, for more than seven years before the commencement of the action, and that there was no controversy in the proof upon that subject, and for that reason the court was in error in submitting that question to the jury and should have directed a verdict for the appellant as to the sixty-six and one-half acre tract of land. The proof does show, without dispute, that the appellant had occupied the sixty-six and one-half acre tract of land by tenants continuously for more than seven years before the bringing of this suit. The provisions of section 2513, Ky. Statutes, are relied upon for appellant as entitling him to the land by reason of such occupancy. At the time Johnson obtained the patent to the sixty-six and one-half acre tract of land, under which the appellant claims, the statute which is now section 4704, Ky. Statutes, was in force and had been substantially in that form for many years theretofore. A part of the section, *supra,* is as follows:

"None but vacant land shall be subject to appropriation under this chapter. Every entry, survey, or patent made or issued under this chapter shall be void, so far as it embraces land previously entered, surveyed, or patented."

In Davidson v. Coombs, 5 R., 812, it was held that the seven year statute of limitations provided for in section 2513, *supra,* did not apply to an occupant under a void patent. The patent being absolutely void, the occupant under it was not holding under a title deducible of record from the Commonwealth of Kentucky, because, as a matter of fact, he held no title. The same principle was upheld by this court in the case of McMillan's Heirs

v. Hutcheson, 4 Bush, 611. Instruction number 3, for that reason, was more favorable to the appellant than he was entitled to, and the instruction should not have been given and would have been an error prejudicial to the substantial rights of the appellee, if the jury, by its verdict, had sustained the claim of appellant under the instruction. The statute, 2513, *supra,* has no application to the state of case presented here.

The evidence in the case, however, offered by the appellant tended to prove that he and those under whom he claimed title had had the adverse possession of the sixty-six and one-half acre tract of land for fifteen years before the commencement of the suit and for that reason he was the owner thereof; and that at the time appellee purchased the sixty-six and one-half acre tract that it was then in the adverse possession of the appellant or Johnson under whom he claimed title, and for that reason the title of appellee was champertous to the sixty-six and one-half acre tract. The evidence offered by appellee tended to prove that the appellant and those under whom he claimed did not have the adverse possession of the sixty-six and one-half acre tract for fifteen years previous to the beginning of the action and that there was no adverse possession of the property at the time appellee made his purchase, and these two questions the appellant had the right to have submitted to the jury under proper instructions.

It is the well settled law of this State, that where one enters into the possession of a tract of land, claiming title under a deed or patent, with the intention to hold and take possession of it to the extent of his boundaries, he is in the actual adverse possession of the entire tract to the boundaries of his deed or patent, to the extent that the boundary of land is not in the actual possession of another. Duff v. Hagins, 146 Ky., 792; Slavey v. Dority, 142 Ky., 640; White v. McNab, 140 Ky., 828; Richie v. Owsley, 137 Ky., 63; Taylor v. Burt, &c., Lumber Co., 109 S. W., 348; King v. See, 87 S. W., 758; Middlesboro Water Works Co. v. Neal, 150 Ky., 586; McLaurin v. Salmons, 11 B. M., 96; Childs v. Connolly, 9 Dana, 385; Harrison v. McDaniel, 2 Dana, 348; Moss v. Scott, 2 Dana, 271; Taylor v. Buckner, 2 A. K. M., 18; Fox v. Hinton, 4 Bibb, 559. The deed or patent under which he holds may be introduced in evidence as showing the extent of his possession, although it is void so far as investing any title in him. A difference exists be-

tween the rule applied to one who is without color of title and the one having color of title. One without color of title is not in possession of the land which he occupies, except to the extent of his enclosure or to the extent of a well-defined and marked or natural boundary to which he claims title. Furthermore, one holding possession and claiming title under a junior patent is not in the actual possession of any more of the boundary than to the extent of his enclosure or to a well-defined and marked or natural boundary, to which he claims, as against one who holds under a superior title and is in the actual possession of the lands embraced within his boundary.

The evidence on the trial below fails to show that the appellee was in the actual possession of any part of the boundary of land to which he held title and which embraced the sixty-six and one-half acres while appellant was in the possession of it.

Under the state of case presented by the evidence, upon the trial below, the instruction number 1 was erroneous and prejudicial to the substantial rights of the appellant, in that it required that appellant and those under whom he claimed to have had a portion of the tract of land enclosed, and to have held and claimed it to a well-defined and marked boundary, in order to have been in the actual and adverse possession of it; and instruction number 4, to the extent that it required appellant or those under whom he claimed to have had some portion of the land enclosed and claiming it to a well-marked boundary before his possession constituted such an adverse possession as to make the purchase of appellee champertous, was erroneous and prejudicial to appellant.

Instruction 6 was unnecessary as it was embraced in instruction No. 1.

It is therefore ordered that the judgment appealed from, as to the two hundred acre tract of land, be affirmed; but as to the sixty-six and one-half acre tract, that it be reversed and remanded for proceedings consistent with this opinion.