## Mullins, et al. v. Robinson.

(Decided October 9, 1925.)

### Appeal from Pike Circuit Court.

1. Public Lands—Patentee of Land Previously Patented Held Not to have Acquired Title.—Patentee held not to have acquired record title from Commonwealth as to disputed land, in view of Ky. Stats., section 4704, where his entry and patent embraced land previously surveyed or patented.

2. Adverse Possession—Finding that Plaintiffs Failed to Acquire Title to Disputed Tract by Adverse Possession, and that Defendant did do so, Sustained.—Evidence held to sustain finding that plaintiffs failed to acquire title to disputed tract by adverse possession, and that defendant did do so.

3. Estoppel—Subsequent Patentee Held Estopped from Claiming Title Contrary to Division of Disputed Tract Made by Commissioners Under Judgment of Division.—Where subsequent patentee of land in dispute participated both by acts and speech in division of such land by commissioners appointed under a judgment of division, he renounced title to any land beyond line made by commissioners, and was estopped from claiming title contrary thereto as against one who acted on renunciation as true.

F. W. STOWERS for appellants.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the 15th day of March, 1875, John L. Robinson duly entered and surveyed for patent 46 acres of land

located on Greasy creek, in Pike county, Kentucky, and according to at least the preponderance of the evidence in this case (and which fact it is to be presumed the lower court found to be true) he took possession of that survey and continuously occupied it, in connection with other lands he owned, until 1901, the date of his death, but he never obtained a patent. There was a prior survey and patent covering a part of that 46 acres which was as old as 1819, but it is quite conclusively proven in this case that Robinson took actual possession of the lap of his survey on to the 1819 prior patent. Robinson was the son-in-law of Ezekiel Prater, and the latter purchased from him, in 1886, 57 acres of land which included all, or the greater part, of the 1875 survey, and Prater moved from where he was then living, some distance away, to that 57 acres. In 1889 Prater, whose children and grandchildren are the appellants, from some cause conceived the idea that Robinson's survey, followed by his occupancy, was not such as to acquire title to the land that the latter had conveyed to him, and he proceeded to survey and patent a body of land which not only included that survey, but extended over and on to other land owned by his son-in-law, Robinson; and it is now claimed by appellants, who were the plaintiffs below, that their ancestor, Ezekiel Prater, after obtaining his patent, took actual possession of all the land within its boundary and held it adversely against all the world till his death in 1910. Proceeding upon that theory, they filed this action against appellee and defendant below, T. J. Robinson (who was in no wise related to John L. Robinson), who by mesne conveyance acquired all the lands owned by John L. Robinson, and sought to recover from him the 22 acres involved in this litigation as being a part of the Ezekiel Prater patent, and to which they say he held title at the time of his death. Defendant denied plaintiffs' title and asserted title in himself under the 1875 survey of John L. Robinson, and which rendered the Ezekiel Prater patent void as to all the land it covered that was also included in the 1875 survey. He also pleaded the requisite adverse possession by himself and predecessors in title. He likewise sought to defeat the Prater patent by averring the existence of the 1819 prior one, and which latter included practically all the land contained in the Ezekiel Prater patent. Another paragraph, or an amended answer, pleaded an estoppel against plaintiffs, based upon certain acts and conduct

of their ancestor, Ezekiel Prater. Appropriate pleadings made the issues, and upon final submission after extensive proof taken, the court dismissed plaintiffs' petition, and they prosecute this appeal to this court.

The record contains much immaterial testimony on collateral and irrelevant issues. If the testimony had been directed to the legitimately formed issues, and was confined strictly to them, it could have been reduced more than one-half and thereby saved this court much time and labor in reading the record. It is strenuously argued by counsel for plaintiffs, who are the appellants, that their ancestor, Ezekiel Prater, had record title from the Commonwealth growing out of his patent of date 1889, and in making such contention, counsel seem to be oblivious of the fact that a part of section 4704 of our statutes renders every survey or patent void, "so far as it embraces lands previously entered, surveyed or patented," and we have steadfastly applied the statute where the subsequent entry and patent embraces land previously surveyed or patented. Some of the many cases so holding are Goosling v. Smith, 90 Ky. 157; Coughlin v. Wilson, 167 Ky. 35, and Mason v. Fuson, 171 Ky. 111. Many cases are referred to in those opinions, and there are still others both preceding and following them to the same effect. It is, therefore, clear that plaintiffs failed to exhibit a record title from the Commonwealth.

The next question is, did they establish, as they contend they did, title by adverse possession to the portion of the Ezekiel Prater patent embracing the 22 acres in controversy? In support of that issue some three or four witnesses testified that Ezekiel Prater gave permission to certain individuals to construct a small tenant house on that land, which was done, and the builder of the house occupied it for one year, followed by occupancy of others with the permission of Prater. There was already land cleared at that place, but the first occupant cleared two or three acres additional, and there is only slight proof as to whether there was any such continued occupancy of the land by Ezekiel Prater or his tenants as to ripen a title by possession, even if such occupancy was with the intention of asserting title. But it is shown without contradiction that John L. Robinson, the son-in-law, was for a number of years prior to his death not only an invalid and wholly unable to manage his farm or transact his business, but that he was also mentally af-

flicted, and that Ezekiel Prater assumed control of both his farms and the custody of his infant children, including the daughter, Mellie, who will hereafter be referred to. Those infant children were taken to the home of Ezekiel, Prater and it is quite well established in this record that he would make tenant contracts with reference to the land of his son-in-law, Robinson, and would sometimes refer to such premises as his. He looked after the cultivation of Robinson's farm, the harvesting of the crops, and most all other matters necessary to the running of that household. Under such circumstances but little weight may be attributed to the acts and conduct of Prater which are relied on in this case to establish adverse possession. Moreover, it is proven by a number of witnesses that Prater never claimed to own beyond a line running from a cedar tree to a pine on the top of a hill, which is the line now claimed by defendant. On the other hand, it is quite conclusively shown by the unimpeached testimony of a number of witnesses that John L. Robinson asserted and held the requisite adverse possession of all the land covered by the 1875 survey, and he sold a part of it to Ezekiel Prater in 1886, and from that time he continued to hold and assert title up to the line from the cedar to the pine. The court did not expressly state the ground upon which he based his judgment, but we may assume that he did so upon the grounds that plaintiffs failed to prove adverse possession, and that the defendant did do so, and which finding of facts is abundantly sustained by the evidence.

The estoppel relied on consisted in the fact that after the death of John L. Robinson, one of his adult children brought suit against the others for a division of the land; judgment of division was therein rendered and commissioners appointed to make it. Ezekiel Prater was present, accompanying the commissioners when that division was made, and at least one of them, as well as other witnesses, testified that he pointed out to them the line between the land he owned, as well as that conveyed by him to his son Daniel, and the land of his son-in-law, John L. Robinson, deceased, and that the line so pointed out by him was the one running from the cedar to the pine. The land so pointed out by Ezekiel Prater as that owned by John L. Robinson was divided by the commissioners and the daughter Mellie, who afterwards married one Thacker, was allotted that portion contiguous to the

line made by the cedar and the pine and which was practically if not all the land involved in this controversy. She and her husband afterwards conveyed that tract to a man by the name of Yost, and by mesne conveyances the title to it was obtained by defendant, T. J. Robinson. The participation, both by acts and speech, of Ezekiel Prater in the division is not disputed by any one. By such conduct he renounced title to any land beyond the line marked by the cedar and pine trees as corners, and the effect of such renunciation was to estop him from claiming title contrary thereto, as against one who acted upon the renunciation as true. 16 Cyc. 757-758; and in notes 69 and 70 to the text, there is found the cases from this court of Wimmer v. Ficklin, 14 Bush 193; Amyx v. Hurt, 24 Ky. L. R. 291, and Gartland v. Conner, 22 Ky. L. R. 920. See also same volume, page 761, defining an estoppel by silence and failure to assert title whereby another acquired it under the belief that the one estopped possessed no title and which belief was generated by the failure of the latter to act or speak when it was his duty to do so.

The court was, therefore, fully warranted in dismissing the petition, and the judgment is affirmed.