## Wilson et al. v. Chappell et al.

(Decided June 17, 1932.)

522

CLEON K. CALVERT, JOHN G. BRUCE and JOHN H. ASHER for appellant.

M. C. BEGLEY and W. H. LEWIS for appellee.

Opinion of the Court by Drury, Commissioner—Reversing.

Appellants, F. A. Wilson and A. J. Asher, plaintiffs, in the trial court and hereinafter so called, sought to enjoin the appellees, defendants in the trial court and hereinafter so called, from cutting timber and otherwise trespassing on 515 acres of land particularly described. Defendants by answer and counterclaim put the title of plaintiffs in issue and asserted title in the defendants to a portion of this land. The court found for the defendants, the petition of the plaintiffs was dismissed, and they have appealed.

This case was here once before, see 224 Ky. 130, 5 S. W. (2d) 882, but upon a different question from the ones now presented.

Henry M. Chappell, the appellee in the former appeal, died after that reversal, and the action was revived against Sarah Jane Chappell, his widow, and his five children, the present appellees. Plaintiffs described two tracts in their petition, but there was no issue about the first one. The second or 515-acre tract is the one

with which this opinion deals. It is made up of parts of patents 44140, 44141, 44142, 44143, 44144, 44145, and 44146, issued to W. H. De Groot et al. in 1870. In a proceeding begun by the commonwealth against George H. Reese et al., these and a number of other De Groot patents were on October 9, 1909, forfeited for nonpayment of taxes.

In May, 1910, these patents were ordered sold. At a sale had July 18, 1910, plaintiffs became the purchasers of these De Groot patents, and on October 6, 1910, this sale was confirmed and deed made. The land in controversy here is tract 20 in that deed. The defenses against the claim of the plaintiffs are set forth in an answer and counterclaim containing five paragraphs. The first is a traverse. The second, a plea of ownership of a described boundary through fifteen years' adverse possession before suit. The third, a plea of estoppel based on the theory that plaintiffs could not purchase the lands in dispute at the sale in the forfeiture action because of the provisions of section 4076f, Ky. Stats. The fourth paragraph is a plea of the five-year statute provided in section 4076g, Ky. Stats., and, the fifth, a plea of champerty aimed at the master commissioner's deed to plaintiffs.

Defendants claim the land in contest under a deed from Burgoyne Chappel and wife to Henry M. Chappel executed July 25, 1890. They exhibit no other claim. The boundary in this deed embraces not less than 2,500 acres, and is from fifteen to twenty miles from the beginning back to the beginning. Within it are the lands in dispute, and certain patents to Chappell, Nance Coldiron, and Stepp which are senior to the De Groot grants and which senior patents Henry M. Chappell owned by good title.

Henry M. Chappell, the original defendant, husband and father of the present defendants, lived within the boundary of this Burgoyne Chappell deed for more than forty years on Greasy fork at the mouth of Elk creek. He lived within the George Chappell grant, which is senior to the De Groots and which Chappel grant he owned. His residence, outbuildings, and improvements were all inside of this and other senior grants, and outside the lands in dispute. No attempt is made to show Burgoyne Chappell had any sort of title to the land in dispute, nor do the defendants attempt to show any sort of title to it except that it lies within the boundary of this Burgoyne

Chappell deed, and that Henry M. Chappell under whom they claim lived for forty years within and claimed to that boundary which they allege and prove was plainly marked and well known. Therefore say the defendants: "We have been in constructive possession of the land in dispute for 40 years." Their argument is that possession of a part is construed as possession of the whole.

"Constructive possession is that which exists in contemplation of law without actual personal occupation." Newcome v. Crews, 98 Ky. 339, 32 S. W. 947, 17 Ky. Law Rep. 899. See 12 C. J. 1304.

Wilson et al. claim that since 1870 they, through De Groot et al., as the actual owners of this land under chain of title from the commonwealth, have been in constructive possession of this land, as constructive possession always follows in the wake of the title.

There cannot be two constructive possessions. Where there are two conflicting claims to land as here, the law cannot contemplate that both claimants are in possession of it. Actually neither has any possession except in contemplation of the law, and the law contemplating that citizens act rightly deems that claimant to be in possession who has the best right to possession. In Jones v. McCauley's Heirs, 63 Ky. (2 Duv.) 14, this court said:

"There can be no constructive possession of the same land by conflicting claimants. In the absence of any actual possession, if there be any constructive possession, it must necessarily be in the holder of the best title, unless he had renounced it. And his constructive possession can never be ousted by any constructive possession claimed under the inferior title; nothing short of renunciation or actual disseisin can evict him."

That was cited and followed in Whitley County Land Co. v. Powers' Heirs 146 Ky. 801, 144 S. W. 2, in which opinion Judge Carroll reviews the various opinions of this court on the question. The holding in that case was that, in case of conflict of titles, both depending on constructive possession, the older title prevails. To that ruling this court has since adhered, the recent cases being: Maynard v. Lowe, 231 Ky. 258, 21 S. W. (2d) 285; Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S. W.

(2d) 659; Pendergrass v. Swiss Oil Corp., 217 Ky. 789, 290 S. W. 713; Pursifull v. Green, 214 Ky. 516, 283 S. W. 1055; Louisville Cooperage Co. v. Collins, 212 Ky. 819, 280 S. W. 137; Ramsey v. Hughes, 212 Ky. 715, 280 S. W. 99.

The claim of the defendants based on constructive possession cannot be sustained.

The defendants also claimed they were in actual possession and they showed they had cleared and tilled some of this land at the head of Peter Gap branch, but the proof shows this was done less than fifteen years before the beginning of this action, so it does not help them.

They also showed they had cleared and tilled some of this land near the mouth of Mill Seat fork, but there is no proof when this was done. To succeed, it was necessary for them to show this was done more than fifteen years before the beginning of this action. Hence their claim based on actual possession fails also.

The defendants attack the plaintiffs' title, because, as they contend, the plaintiffs were by section 4076f not permitted to purchase this land when it was sold soon after it had been forfeited. In the Ky. Stats. of 1930 this section begins thus: "Any owner or claimant who instituted a proceeding allowed by section 4076b of this article," etc. That is erroneous. In the Kentucky Statutes of 1909, 1915, and 1922 it read: "Any owner or claimant who instituted a proceeding allowed by section 2 (4076b) of this article," etc. That was partially correct, but an examination of the enrolled bill shows section 4076f should read this way: "Any owner or claimant who instituted a proceeding allowed by section 4076c of this article," etc.

A party who proceeds under section 4076c, and then fails to pay the taxes ascertained, is by section 4076f not allowed to purchase it back under the provisions of section 4076e. At the time the forfeiture proceedings were instituted, one A. Gatliff and A. J. Asher claimed some interest in this land, and they were made defendants in that forfeiture suit. They made an unsuccessful effort under section 4076c to have the amount of the taxes ascertained, but their steps taken were not sufficient, and on appeal to this court their petition was directed to be dismissed. See Commonwealth v. Gatliff, 132 Ky. 95, 116 S. W. 263. They made no effort to repurchase this property under provisions of section 4076e, and the property when sold was sold, as this record shows, under

a judgment rendered under section 4076h, and there is nothing in that section to prevent any one from buying at a sale had thereunder. So this attack on the title of the plaintiffs fails.

They cite section 4076g, Ky. Statutes, and allege that the effect of the judgment of forfeiture entered October 9, 1909, was to perfect their title to the land in controversy, as they were then, so they allege, in the actual open, notorious, continuous peaceable adverse possession of it and had been so for more than five years, and during all that time had listed same for taxation and had paid the taxes thereon. We have already stated what was shown regarding possession, and that the only possession the defendants could even start to claim of this disputed land is a constructive possession and that they did not even have that. The forfeiture of these De Groot patents did not give these defendants the five years of actual adverse possession required by section 4076g, Ky. Stats.

The failure to prove an actual adverse possession is equally fatal. Hence we conclude their claim was not bettered by the forfeiture proceeding.

Their final contention is that they were in adverse possession of this property when the plaintiffs bought it at the sale under the judgment of the court after the forfeiture, and that plaintiffs' purchase was champertous, but the Champerty Statute (Ky. Stats., sec. 210) does not apply to such a sale. See Golden v. Blakeman, 223 Ky. 517, 3 S. W. (2d) 1095; Fordson Coal Co. v. Mills, 234 Ky. 64, 27 S. W. (2d) 382; Lashley v. Duvall et al., 226 Ky. 685, 11 S. W. (2d) 708.

This same property was involved in former litigation that reached this court. See Black et al. v. Chappell et al., 141 Ky. 85, 132 S. W. 186, and Id., 175 Ky. 477, 194 S. W. 550.

Counsel for both parties throughout the briefs constantly refer to our present statutes as the ''Revised Statutes.'' This has been done by this same counsel in several other appeals that have recently come to this court. We hope that practice will be discontinued. This state once adopted a work known as the ''Revised Statutes,'' it became effective July 1, 1852, and was superseded on December 1, 1873, by the ''General Statutes,'' and this work has been superseded by our present ''Kentucky Statutes.''

The judgment is reversed, the counterclaim of the defendants dismissed, and the trial court will award the plaintiffs the relief for which they prayed.