## Holcomb v. Swift Coal & Timber Company.
### (Decided Dec. 8, 1933.)

DAVID HAYS for appellant.

BAILEY P. WOOTTON, D. I. DAY and C. H. BURTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

In this action deeds were made under orders of the court conveying to the apellee, which we shall call the S. .C. & T. Co., five tracts of land in Letcher county, and to appellant two tracts, and John D. Holcomb has appealed. To avoid confusion, we shall designate these

tracts in this manner. There was conveyed to the S. C. & T. Co. 44/45 of a tract we shall refer to as A, and the whole of four other tracts; of these the one described as No. 1 we shall call B, No. 2 we shall call C, No. 3 we shall call D, and No. 5 we shall call E; and of the tracts conveyed John D. Holcomb we shall call the one designated as No. 1 F and No. 2 we shall call G.

The S. C. & T. Co. is not complaining. John D. Holcomb objects to the conveyance to the S. C. & T. Co. of tract A, but, as he had claimed no interest in that tract, he cannot complain. He objects to the conveyance to the S. C. & T. Co. of tract D, which is the same tract conveyed to S. C. & T. Co. in Holcomb v. Collins et al., 195 Ky. 268, 242 S. W. 353, but as he has, in this action, abandoned his claim to that tract, he is in no position to complain. He complains of the conveyance to him of tract F, but such conveyance could not possibly hurt him, so that is the end of that. No one is complaining of the conveyances made of tracts E and G.

That leaves tracts B and C, and Holcomb insists that all of tract C and the western part of tract B were his and should have been conveyed to him and not to the S. C. & T. Co., and this is the controversy here. The extent of the land that was in controversy in the trial court was about 41 or 42 acres, of which about 12 acres were adjudged to John D. Holcomb, thus leaving about 30 acres in controversy here.

### Claim of John D. Holcomb.

Many years ago, and possibly prior to 1800, there lived in Virginia a Mr. and Mrs. Holcomb, who, unable to live together in peace, separated and Mrs. Holcomb came to Ky., with a man named Thomas Early sometimes called Yeary, bringing with them Mrs. Holcomb's two children, Hardin and Henderson Holcomb. They settled on Line Fork creek, built a house, and began to claim all the land thereabouts. Later through a partition agreement of some kind Hardin Holcomb began to claim the western part of this property and Henderson Holcomb to claim the eastern part. In 1866 Henderson Holcomb attempted to convey to his son John Holcomb a tract of land on Line Fork, which is a portion of this eastern part, and John Holcomb in turn attempted to convey this land to John D. Holcomb.

The claim of John D. Holcomb thus derived was involved in Holcomb v. Collins et al., 195 Ky. 268, 242 S. W. 353, and the court there, because of insufficient description, held against his claim as asserted under those deeds. His brief in this case reads like a petition for rehearing in that one, for he is now asserting title through his ancestors by virtue of this long-maintained possession, he relies again on those deeds, and is calling attention to the fact that he is now living and has always lived on this tract in the very house in which his father was born in 1832, and in which his father and grandfather had lived.

His great grandmother was simply a squatter, a mere trespasser, and of course only got title to that whereon she squatted, inclosed, and cultivated, after maintaining an open visible, uninterrupted, exclusive, and peaceable adverse possession of it for the requisite length of time. See Brooks v. Clay, 10 Ky. (3 A. K. Marsh.) 545; Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S. W. (2d) 659.

No definite limits were set to this claim then, farther than that they claimed all of the watersheds of Line Fork creek and Holcomb's branch. A squatter's possession only includes the land he actually incloses or cultivates, unless his whole claim is inclosed by well-marked boundaries. See Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34, 38, in which case it is written:

> "The occasional marking of a tree here and there, or the assertion of a claim to a boundary that begins, for example, 'at the top of a mountain' and runs 'to the top of a ridge,' and thence 'to a big flat rock,' and thence 'to a poplar tree on a creek,' is not such a boundary as will put the claimant without a deed in possession of the land to the boundary, or outside of his settlement or inclosure."

If a squatter has a well-marked boundary to which he claims that goes beyond his inclosure or cultivation, then he is in actual possession of his inclosure or cultivation, and in contemplation of the law is in constructive possession of such other property as is within this well-marked line.

In New Domain Oil & Gas Co. v. Gaffney Oil Co., 134 Ky. 792, 121 S. W. 699, this court describes such a possession maintained under a color of title as a constructive actual possession, but in New York-Ky. Oil & Gas Co. v. Miller, 187 Ky. 742, 220 S. W. 535, this court said the expression ''Constructive actual Possession'' has been dropped as confusing, and we classed the possession there asserted (one based on color of title) as an actual possession, but, where a man without a color of title marks off a boundary to which he claims, his possession of those parts not actually inclosed or cultivated is, to say the most, only constructive. True, John D. Holcomb has a deed under which he is claiming, but, it having been held that it is void for defective description, it cannot afford him color of title. See Burks v. Cox, 150 Ky. 511, 150 S. W. 662; Henderson v. Howard's Devisees, 8 Ky. (1 A. K. Marsh.) 26; 2 C. J. p. 177, sec. 339; 1 R. C. L. p. 714, sec. 26, note 11.

His grandfather, Henderson Holcomb, his father, John Holcomb, and the appellant, John D. Holcomb, have not been unmindful of the insecurity of their claims, and they have persistently sought to better them. On April 13, 1844, survey No. 5701 of 500 acres was made for Henderson Holcomb; March 25, 1858, survey No. 40769 of 200 acres was made for Ira Stamper; January 27, 1859, survey No. ————— of 75 acres was made for John Holcomb; October 2, 1873, survey No. 51871 of 50 acres was made for John Holcomb; January 13, 1884, survey No. 59532 of 100 acres was made for John Holcomb. No system was observed in making these surveys, there are spaces between them seemingly covered by no survey, and at other places they overlap each other, and some of this land is in as many as four of them. It is claimed John D. Holcomb has by proper conveyances become the owner of all of these various surveys, and we have assumed that is true.

These surveys are generally located in the valley of Line Fork creek and the valleys of Holcomb branch and the other streams that flow into Line Fork creek. When they were made that was perhaps all that was considered of any value, but later the idea came that ''Thar's gold in them thar hills,'' or some similar thought, and, when Henderson Holcomb made conveyance to John Holcomb and he in turn made conveyance

to John D. Holcomb, they undertook to stretch these surveys and to cover and include all the land between the Limestone cliffs on the south and the top of the ridge between Line Fork creek and Defeated creek on the north and these are the deeds that have been held void for lack of definite description.

### Effect of These Stretching Efforts.

In Brown v. White, 153 Ky. 452, 156 S. W. 96, 98, an effort to stretch had been made of which the court said:

> "Having no record title to this tract, the Crosslands could not acquire title against the superior title holder by merely claiming beyond their deeded boundary, * * *not having actually entered on the the strip in controversy and held actual possession of it for the statutory period, they acquired no title to this strip by adverse possession."

To same effect, see Fairchild v. Mayo, 232 Ky. 778, 24 S. W. (2d) 599; Combs v. Jones, 244 Ky. 512, 51 S. W. (2d) 672.

The reason underlying these decisions is that, when an entry is made under a deed, a patent, or even under a bare color of title, it is presumed to have been made in conformity thereto, and the actual possession of the entrant will by construction be extended to the boundary of such deed, patent, or color, if by so doing the possession of another is not invaded, but the same rule that carries an actual possession to the boundary of the deed, patent, or color stops such possession at the boundary when he undertakes to stretch. An entrant cannot claim both under and against his deed, patent, or color. Hence claims of an adverse possession by John D. Holcomb under patents, deeds, or color elsewhere in this processioned boundary are limited to the boundaries of them, and they do not reach the land in dispute, but he has a fenced and cultivated tract (about 12 acres) within this disputed territory, and, while he has no color of title, he does have a marked boundary around this disputed property, and has about 12 acres in actual possession, and the question is, What is the nature of his possession, if any, to the remaining 30 acres or thereabouts within this disputed strip? In 1 R. C. L. p. 728, sec. 44, it is said:

"In the case of an entry by a mere trespasser, the rule of constructive possession has nothing on which to operate; therefore, the claimant's occupation must be confined to his actual possession."

To same effect, see Slaven v. Dority, 142 Ky. 640, 134 S. W. 1166; Shackleford v. Smith, 35 Ky. (5 Dana) 232; Le Moyne v. Roundtree, 135 Ky. 40, 121 S. W. 960; Fuller v. Keesee, 104 S. W. 700, 31 Ky. Law Rep. 1099; Caughlin v. Wilson, 167 Ky. 35, 180 S. W. 40; Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S. W. (2d) 659; Meade v. Ratliff, 133 Ky. 411, 118 S. W. 271, 134 Am. St. Rep. 467.

In 1899, John D. Holcomb had his property processioned, and he then stretched the boundaries to which he had title so as to include property to which he had not even a color of title, and he had the lines and corners of his claims as so stretched well marked. That is the first evidence of a well-marked line affecting this disputed property that appears in the record. Thus since 1899 John D. Holcomb has in addition to the actual possession of his inclosures and cultivations (about 12 acres) had, to say the most, only such constructive possession as above set out of the disputed land within this processioned boundary. John D. Holcomb's claims as processioned form approximately a rectangle extending about 300 poles east and west and about 420 or 425 poles north and south.

### Claim of S. C. & T. Co.

The S. C. & T. Co. claimed a tract of land, the larger part of which lies to the east and northeast of the land claimed by John D. Holcomb, but a portion thereof, which is a long narrow strip approximately 40 poles in average width north and south and extending about 200 poles east and west, extends onto and overlaps a portion of the northeast part of the land inclosed in John D. Holcomb's processioned boundary, but covers no part of any of the surveys mentioned and which we have assumed belonged to John D. Holcomb, being in conflict with the part of this processioned boundary over which he has sought to stretch these surveys.

The larger part of the land in dispute is claimed by the S. C. & T. Co. under a patent for 100 acres

issued to Samuel Holcomb on April 15, 1856, based upon a warrant dated October 27, 1853. The other 4 or 5 acres of this disputed strip it claims under a survey of 50 acres made for Samuel Holcomb on January 27, 1869, but for which no patent was ever issued. This 50-acre survey adjoined and partially overlapped the 100-acre patent, and it is shown Samuel Holcomb was in possession thereof by a house, clearing, and cultivation from 1869 to 1893.

Samuel Holcomb mortgaged this property to John and S. B. Dishman to defend him on a charge of murder; the property was sold to satisfy this mortgage and bought by David Holcomb. In the course of litigation begun by the S. C. & T. Co. claiming under Samuel Holcomb against David Holcomb's heirs, it purchased their interest from David Holcomb's heirs, and John D. Holcomb does not dispute the S. C. & T. Co.'s ownership of the 100-acre tract and the 50-acre tract, except that he claims that by his possession he has acquired title to a portion thereof. The S. C. & T. Co. has no evidence of possession since 1893, but has of course that constructive possession that follows in the wake of the title.

### The Two Possessions.

A portion of tract B (some 4 or 5 acres) is within John D. Holcomb's processioned boundary and is also within the 50-acre survey made for Samuel Holcomb on January 27, 1869, under whom the S. C. & T. Co. claims. Neither of these parties has ever actually occupied any part of this 4 or 5 acres. John D. Holcomb has actual cultivations within his processioned boundary, but none on this 4 or 5 acres. The S. C. & T. Co. has had actual cultivations upon this 50-acre survey, but none on this 4 or 5 acres.

### The Judgment.

John D. Holcomb's processioned boundary was made in 1899, and the S. C. & T. Co. is holding under a survey made in 1869. A bare survey does not give color of title (see 2 C. J. p. 192, sec. 377); neither does a processioner's report. So in passing upon the equities of these parties the court did not err in awarding this 4 or 5 acres to the S. C. & T. Co., as its equity is the older.

This brings us to the conflict of the claims asserted by the S. C. & T. Co. under the 100-acre patent made to Samuel Holcomb and that asserted by John D. Holcomb under his processioned boundary and his squatting therein. As we have stated before, this is a long narrow strip running east and west across the northeast part of John D. Holcomb's processioned boundary. He had an actual inclosure or cultivation more than 15 years old, of about 12 acres, within his processioned boundary, which cultivation extends across this strip and cuts it in two. The court adjudged this tract of about 12 acres to John D. Holcomb, it was included in the tract F that was conveyed to him, and the S. C. & T. Co., is not complaining. What, however, is to be done with the portions of this strip to the east and to the west of this 12 acres? We will consider the 2 or 3 acres to the west first, which is tract C and which was conveyed to the S. C. & T. Co. Neither party had any inclosure or cultivation upon it. It lies within John D. Holcomb's processioned boundary, within which, but elsewhere, he had actual inclosures and cultivations and to which processioned boundary he was claiming, so, to say the most, he had only constructive possession of it, but it also lies within the 100-acre patent issued to Samuel Holcomb many years ago upon which he entered shortly thereafter and thus acquired actual possession of the whole of it (2 C. J. p. 235, sec. 507), to which title the S. C. & T. Co., has succeeded; hence, without proof of actual possession since 1893, it has that constructive possession that follows in the wake of the title; therefore the court did not err in awarding this tract C to the S. C. & T. Co., and for the same reason there was no error in awarding to it the land east of this 12 acres and composing that part of tract B that lies within John D. Holcomb's processioned boundary, and within this 100-acre patent. In the preparation of its case, the S. C. & T. Co. proved Sam Holcomb's possession up to 1893 and apparently overlooked proving actual possession since 1893, but it does show its title from the commonwealth, and hence it has that constructive possession which follows the title and, between two constructive possessions, the one based on title is the better. See Wilson v. Chappell, 244 Ky. 521, 51 S. W. (2d) 669; Ramsey v. Thomas, 140 Ky. 356, 131 S. W. 11.

This case cannot be distinguished from the case of Le Moyne v. Roundtree, 135 Ky. 40, 121 S. W. 960. The S. C. & T. Co. here has the paper title from the commonwealth just as Le Moyne had there. Holcomb's claim here is adverse possession, just as the claim of Hays was there. The 41 or 42 acres in dispute here corresponds to the 200 acres in dispute there, and the 12 acres of actual possession here corresponds to the 20 acres of actual possesion there, and Holcomb has here a marked boundary around this 41 or 42 acres in dispute just as Hays had there a marked boundary around the 200 acres in dispute in that case, and, this court having awarded Hays only the 20 acres out of the 200, the trial court in this case did not err in awarding Holcomb only this 12-acre inclosure out of the land in dispute here.

### The Plea of Estoppel.

John D. Holcomb pleaded in this case that in the case of Holcomb v. Collins, 195 Ky. 268, 242 S. W. 353, he had filed an answer and counterclaim in which he had asserted title to the whole of this processioned boundary, and, as the S. C. & T. Co. did not then assert title to the land it is claiming now, it is, so he says, estopped to do so now. The record in that case has been made a part of this one, and it shows that on November 3, 1913, the S. C. & T. Co. moved the court to require John D. Holcomb to set out and describe the land he was claiming, whereupon he amended his answer (see page 77½ of that record) and asserted title to the land involved in that litigation, and made no claim to the land in controversy in this action, so there is nothing in his plea of estoppel, for he did not assert title then to the land to which the S. C. & T. Co. is asserting title now.

The judgment is affirmed.